Ruth M. ARCHIBALD et al.,
Plaintiffs, Appellees,.

v.

Frank WHALAND et al., Defendants,
Appellants.

No. 76–1440.

United States Court of Appeals,
First Circuit.

Argued Dec. 7, 1976.

Decided May 20, 1977.

**1062**

Wilbur A. Glahn, III, Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen., Concord, N. H., was on brief, for appellants.

Richard A. Cohen, Manchester, N. H., with whom Raymond J. Kelly, Keene, N. H., was on brief, for appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The defendant New Hampshire Department of Health and Welfare (Department) terminated AFDC assistance to plaintiff's children[1] on the ground that they were no longer "deprived of parental support", see 42 U.S.C. § 606(a), plaintiff's remarriage having brought a legal stepfather into the home. Plaintiff contends that this determination of ineligibility was inconsistent with federal standards as set forth in a regulation of the Department of Health, Education and Welfare, which administers the AFDC program nationally. The regulation requires that

> "the determination whether a child has been deprived of parental support or care . . . be made only in relation to the child's natural or adoptive parent, *or in relation to the child's stepparent who is* ceremonially married to the child's natural or adoptive parent and is *legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extend* [sic] *that natural or adoptive parents are required to support their children.*" 45 C.F.R. § 233.90(a). [Emphasis supplied.]

The predecessor to this regulation has been upheld as a valid interpretation of the Social Security Act by the agency charged with administering it Lewis v. Martin, 397 U.S. 552, 558–59, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). Thus the legal issue before us is whether the support obligation imposed on stepparents under New Hampshire law meets the regulatory standard.

The Department relies primarily on New Hampshire's version of the Uniform Civil Liability for Support Act, RSA 546—A (Supp.1973), which provides in part:

> "546—A:1 Definitions. As used in this chapter:
>
>   \*      \*      \*      \*      \*      \*
>
> IV. 'Child' means either a natural or adopted child or a stepchild.
>
> 'V. 'Father' or 'mother' means either a natural or adopted father or mother or a stepfather or stepmother.

---

1. The case was initiated by plaintiff Ruth Archibald. The court subsequently certified a class of "all persons otherwise eligible for AFDC benefits who have been or will be denied said benefits solely on the grounds that their recipient parents have married or remarried and there is a stepparent living in the home."

    The action sought declaratory and injunctive relief alleging violation of both the Equal Protection and Due Process clauses of the Fourteenth Amendment and contravention of the Social Security Act, 42 U.S.C. § 601 et seq. The court, deeming the constitutional claims not insubstantial, first heard and decided the statutory claim before convening a three-judge court. Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

*546—A:2 Liability.* Every person whose income or other resources are more than sufficient to provide for his or her reasonable subsistence compatible with decency or health owes a duty to support or contribute to the support of his or her wife, husband, child, father or mother when in need."

In November of 1970 HEW's regional office surveyed what it considered to be the applicable New Hampshire law and found that the obligation imposed by RSA 546—A was "precisely the same for the stepparent as for the natural parent", and further that no other statute or case law imposed a greater duty on natural parents. It therefore concluded that "the obligation of support arising under New Hampshire law is sufficiently similar in duration and scope with respect to a natural parent and a stepparent as not to prevent compatibility with the Federal regulation [then 45 C.F.R. § 203.1]."

The district court, recognizing the near absence of pertinent case authority interpreting the regulation, took as its starting point the criteria proffered by HEW in its amicus curiae brief filed in *Lewis v. Martin, supra,* 397 U.S. at 552, 90 S.Ct. 1282. That brief described a qualifying state support obligation on the part of a stepparent as "[1] a duty of general applicability [2] which he could be compelled by court order to fulfill even after he has deserted or abandoned the household and [3] regardless of whether the children would otherwise receive AFDC payments." The court then excised the second requirement on the basis of the Supreme Court's summary dismissal of the appeal in *Kelley v. Iowa Department*

*of Social Services,* 197 N.W.2d 192 (Iowa 1972), for want of a substantial federal question, 409 U.S. 813, 93 S.Ct. 170, 34 L.Ed.2d 69.[2]

After an exhaustive analysis of state statutes and case law, the district court concluded that the basic civil support statute, RSA 546—A, did not create a stepparent support obligation of "general applicability" since the "obligation arises only when stepchildren are 'in need,' which is closely analogous to the welfare situation."[3] The court further concluded that stepchildren were not protected "to the same extent" as natural children because they are excluded from the coverage of the state domestic relations laws, RSA ch. 458, which provide for support without regard to need when parents are living apart, RSA 458:35, and pending and after divorce, RSA 458:16–17. It also attached some, though not conclusive, significance to the fact that only a natural father is criminally liable for non-support of his neglected needy children under RSA 460:23.

The district court therefore held that New Hampshire's stepparent support obligation did not meet the federal regulatory standard, and that the state's policy of denying AFDC benefits to children living with a natural parent and a legally married stepparent contravened federal law. It then issued an injunction against the state prohibiting the denial of AFDC benefits to the class pending appeal. Both it and we denied a stay.

In determining whether the district court was correct in concluding that the New Hampshire statute was not "of general applicability" and that stepchildren were not

**2.** The jurisdictional statement in *Kelley* posed the question whether Iowa could, as the state court had held, attribute a stepparent's income and resources to a child, consistently with the predecessor of 45 C.F.R. § 233.90(a), when under Iowa law a stepparent's support obligation, otherwise coextensive with that of a natural parent, endured only so long as stepparent and stepchildren were living together. Appellee unpersuasively argues that the precise issue before the Court did not implicate the "living together" issue. We think it did, and we do not think that the present case is persuasively distinguished on the ground that it involves eligi-

bility determination rather than income attribution, as the regulation applies to both functions. However, we do not rely conclusively on the summary dismissal, as our opinion reveals, *infra.*

**3.** The court rejected as do we, the argument that in practice the New Hampshire authorities may not have enforced NH RSA 546—A against stepparents. What has been done in the absence of definitive legal guidance in the past cannot be determinative of the future.

protected "to the same extent" as natural children, we look first to the Supreme Court's interpretations of the statutory and regulatory provisions on "parental support".

Congress, in passing the original social security legislation, provided for the support of children in two ways. One was the effort to provide employment and unemployment compensation, the underlying assumption being that " 'breadwinners' who secured employment would support their children. This congressional expectation is most reasonably explained on the basis that the kind of breadwinner Congress had in mind was one who was legally obligated to support his children." *King v. Smith,* 392 U.S. 309, 329, 88 S.Ct. 2128, 2139, 20 L.Ed.2d 1118 (1970). The other means of providing support for children, AFDC, "was intended to provide economic security for children whom Congress would not reasonably expect would be provided for by simply securing employment for family breadwinners." *Id.* at 329–30, 88 S.Ct. at 2140. Such an illusory "breadwinner" was the Alabama "substitute father" in *King* who was "under no legal duty to support a child" and whose employment, therefore, "would in [no] way provide meaningful economic security for that child." *Id.* at 330, 88 S.Ct. at 2140. The only kind of "parent" whose presence in a home could be a substitute for direct AFDC assistance, i. e., one who "would provide adequate economic protection for a dependent child is one who is legally obligated to support him." *Id.* at 332, 88 S.Ct. at 2141.

HEW's regulation in substantially the form of present 45 C.F.R. § 233.90 was promulgated shortly thereafter and was at issue in *Lewis v. Martin, supra,* 397 U.S. at 552, 90 S.Ct. 1282. In that case HEW had determined that a California statute reducing or eliminating AFDC benefits, by assuming as available to a child income from "a man assuming the role of a spouse" (MARS), was inconsistent with the federal regulation. The obligation of the MARS was to support his wife's children if, without his support, they would be eligible for AFDC. There was no means of enforcing this obligation: the law merely required

that his income be considered in calculating eligibility and benefits. A three-judge court dismissed a complaint attacking the validity of the California statute, holding that the federal regulation was invalid. The Court, in upholding the federal regulation, discussed "general applicability" in these terms:

"We only add that HEW might reasonably conclude that only he who is as near as a real or adoptive father would be has that consensual relation to the family which makes it reliably certain that his income is actually available for support of the children in the household. HEW may, in other words, reasonably conclude that an obligation to support under state law must be of 'general applicability' to make that obligation in reality a solid assumption on which estimates of funds actually available to children on a regular basis may be calculated.

Any lesser duty of support might merely be a device for lowering welfare benefits without guaranteeing that the child would regularly receive the income on which the reduction is based, that is to say, it would not approximate the obligation to support placed on and normally assumed by natural or adoptive parents." *Lewis v. Martin,* 397 U.S. 558–59, 90 S.Ct. 1285.

While this discussion is not exhaustive, it does indicate that any law of "special applicability", i. e., requiring stepparent support only if and so long as a child without that support would be eligible for AFDC, does not provide the solid assurance of regular, continued support which would underlie the kind of assumption made in the case of a natural father-breadwinner. Not only might eligibility and thus a support obligation fluctuate from month to month, but children not eligible for AFDC because of their age would have no protection whatsoever. Moreover, there is an element in the Court's discussion of disapproval of a "device" calculated only to lower welfare benefits without giving a child a guarantee which "approximate[s]" the obligation to support placed on and normally assumed by

natural or adoptive parents." 397 U.S. at 559, 90 S.Ct. at 1285.

With this background in mind, we examine New Hampshire's Uniform Civil Liability for Support Act, RSA 546—A, to see if it is law of "general applicability". The district court deemed the "when in need" language of the statute to mean "when in necessitous circumstances and . . . not solely relative to the status and wealth of the parties." It found the support obligation to arise only when children or stepchildren were " 'in need,' which is closely analogous to the welfare situation", and concluded that this limitation prevented the statute from being one of "general applicability".

■ We are not convinced that the civil support obligation is so limited as the district court concluded.[4] But in any event we do not believe that the economic level of the obligation affects the conclusion that the statute, which by its terms applies to all natural, adoptive and stepparents, is one of "general applicability". We think that the requirement of "general applicability" focuses on arbitrary limitations which make it clear that the duty of support is defined not in terms of the stepparent relationship, but primarily in terms of welfare eligibility. *See Gaither v. Sterrett,* 315 F.Supp. 990 (N.D.Ind.), *aff'd mem.,* 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970); *Uhrovick v. Lavine,* 43 A.D.2d 481, 352 N.Y.S.2d 529, *aff'd.,* 35 N.Y.2d 892, 364 N.Y.S.2d 890, 324 N.E.2d 360 (1974). In one case a stepparent obligation limited to children under 18 was held to be incompatible with the federal regulation since it did not even create a legal obligation coextensive with the child's welfare eligibility. *Bunting v. Juras,* 11 Or.App. 297, 502 P.2d 607 (1972).

We have discovered no case, however, in which a support obligation based on need, as opposed to welfare eligibility per se, and which applies to natural, adoptive and stepparents on identical terms, has been disapproved as one of limited applicability. Indeed, under the district court's approach, the state may have to impose a greater duty on stepparents, since an obligation triggered by need would not be one of "general applicability" even if it was identical to the duty imposed on natural parents. As we read the HEW Regional Attorney's evaluation of New Hampshire law, it is of no concern to HEW that the state defines a parent's duty of support in terms of need, so long as the obligation is the same for both natural and stepparents. As the Court noted in *Lewis,* "[w]e give HEW the deference due the agency charged with the administration of the Act, see, *e. g., Red Lion Broadcasting Co., Inc. v. FCC,* 395 U.S. 367, 381 [89 S.Ct. 1794, 1802, 23 L.Ed.2d 371] [1969]; *Zemel v. Rusk,* 381 U.S. 1, 11–12 [85 S.Ct. 1271, 1278, 14 L.Ed.2d 179] [1965]." 397 U.S. at 559, 90 S.Ct. at 1286. This deference is somewhat weightier when the agency is not construing legislation but its own regulations. *Bourgeois v. Stevens,* 532 F.2d 799, 802 n. 5 (1st Cir. 1976).

■ We therefore hold that the stepparent's duty of support in New Hampshire, which is not "tailored to welfare", and which covers children of all ages, arises under state law of "general applicability", and we proceed to the second phase of our inquiry: whether the stepparent's obligation goes "to the same extent" as that of natural parents. After its review of New Hampshire law, HEW found that the requirements of the regulation had been met. The district court, however, without referring to HEW's ruling, concluded that because stepchildren were excluded from the protection of criminal support and domestic relations laws, they were not protected "to the same extent" as natural children.

---

4. The New Hampshire court has defined "necessitous circumstances" under the criminal support statute, RSA 460:23, to mean "in layman's language, without food, clothing or shelter". *State ex rel. Cote v. Cote,* 104 N.H. 345, 346, 186 A.2d 832, 833 (1962). We have found no case shedding light on the degree of "need" that triggers the support obligation under the civil statute, but we note that in fixing the amount of support the court is directed to consider "all relevant factors including but not limited to" the standard of living, relative wealth and relative earning power of the parties. RSA 546—A:5. These factors seem to contemplate a level of support well above basic food, clothing and shelter.

■ Both HEW and the district court concluded that RSA 546—A:2 imposed a duty of support only when children are in necessitous circumstances, and that no greater obligation could be enforced against natural parents under the criminal statute. The district court recognized that the criminal "statutes do not create support rights [but] simply allow the State to use criminal sanctions to compel support", but it felt that this additional sanction was "significant" in determining the extent of protection available to stepchildren. Since the Uniform Civil Liability for Support Act imposes the legal obligation, which is an enforceable one, we accept HEW's construction that the unavailability of the additional criminal sanction does not defeat New Hampshire's compatibility with the federal regulation. Cf. *Borkman v. Comm'r. of Social Welfare*, 128 Vt. 561, 268 A.2d 790, 793–94 (1970) (criminal penalty alone without enforceable civil obligation does not comply with federal regulation).

The more crucial difference in the analyses is that, while HEW did not consider the New Hampshire domestic relations statutes, the district court relied heavily on the greater level of support it believed these statutes required. No New Hampshire case has expressly decided whether they afford protection to stepchildren, although at least one of them, RSA 458:16IV (Supp.1975), is applicable only to "children of the marriage". In divorce and separation contexts, they provide for support pending decree "as shall be deemed expedient for the benefit of the children". RSA 458:16IV (Supp.1975), and final support on terms that "shall be most conducive to their benefit". RSA 458:17 (Supp.1975). If as both HEW and the district court concluded, RSA 546—A:2 depends on "necessitous circumstances" the domestic relations statutes apparently impose a greater support obligation.

Consideration of these domestic relations statutes would seem largely foreclosed if the disparity in support obligations between natural parent and stepparent upon leaving the home is made irrelevant by the Court's action in *Kelley, supra.* Even if *Kelley* does not foreclose consideration, we deem them irrelevant when we consider that when a stepparent leaves the family, the AFDC program becomes available. *See Kelley v. Iowa Dept. of Social Services, supra,* 197 N.W.2d at 195. We see no reason of welfare policy that would make post-separation support obligations germane to the question of compliance with 45 C.F.R. § 233.90(a), which deals with the requirements to be met if AFDC is not to be available.

The district court, however, believed that under RSA 458:16IV (Supp.1975), the putatively higher domestic relations support orders may come into play if a divorce libel has been filed even if the parents are still living together. We think that this statute, which governs temporary support pending divorce, may fairly be read as assuming that the parties are living apart, and in any event we do not know how realistic it is to contemplate an order for support pending divorce being sought while husband and wife are living together. Nevertheless, if a differential in support obligation of such limited scope were to control our decision, a very small tail would indeed be wagging a very large dog. Unless absolutely identical and coextensive support obligations are envisaged by the regulation, this de minimis discrepancy should not determine the issue of compliance with 45 C.F.R. § 233.90(a).

■ Recalling our discussion of *King v. Smith, supra,* and *Lewis v. Martin, supra,* we believe the Court's teaching in these cases to be that the support function served by AFDC itself could only be replaced by a breadwinner with the "approximate" support obligations of a natural parent. Were all of the obligations to be identical and coextensive, the effect would be a compulsory requirement on all states participating in AFDC (and all states do participate) to have civil support, criminal support, and divorce and separation laws treating natural, adoptive, and stepparents equally in all respects. We can discern no interest of national welfare policy that requires such pervasive monitoring of state domestic relations law.

We therefore hold that the New Hampshire law regarding the support obligations of stepparents is a law of general application and that HEW's conclusion that it obligates stepparents to support their stepchildren to the same extent as natural parents is supported.

*Reversed and remanded for consideration of the constitutional claims.*