## William C. Garrow v. Patricia J. Garrow

[553 A.2d 569]

No. 86-244

Present: **Allen, C.J., Hill, Peck and Gibson, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed September 30, 1988

*William C. Garrow, pro se*, Adah, Pennsylvania, for Plaintiff-Appellant.

*Peter J. R. Martin*, St. Albans, for Defendant-Appellee.

**Barney, C.J.** (Ret.), Specially Assigned. This is a pro se appeal by plaintiff from an order denying modification of a child support obligation and requiring payment of an arrearage from an escrow account. We affirm.

The parties were divorced in December 1984. In November 1985, Mr. Garrow filed a motion to modify his obligation under the divorce decree to pay $110 per week in child support for his two children, on the ground that circumstances had changed. After a hearing in May 1986, the Franklin Superior Court denied the motion, finding, inter alia, that Mr. Garrow was in arrears in the amount of $4,840 in child support; that his attorney was hold-

ing $6,000 in escrow pursuant to the court's order; that he had voluntarily left his position with the U.S. Customs Service for study and/or work in an area which would pay him less than half the salary of his prior job; and that during the prior year he had $34,000 gross income at his disposal.

Mr. Garrow raises several issues on appeal. His central claim is that the trial court erred in concluding that he had adequate funds to meet his court-ordered obligations. He also maintains that he left his employment for medical reasons and that the trial court's finding that his reduction in income was voluntary is therefore erroneous. Mr. Garrow further claims that the court erred by excluding certain evidence and admitting other evidence, and that the court was prejudiced against him because of his homosexuality. Finally, he argues that the court should not have held hearings in August and September 1986 on defendant's motion to enforce the judgment, since by that date Mr. Garrow had already filed his appeal with the Supreme Court. We will address these claims in turn.

■ Our review of the factual findings below must accord the trial court deference. The court has broad discretion to determine whether it will modify a support order. See *DeKoeyer* v. *DeKoeyer*, 146 Vt. 493, 497, 507 A.2d 962, 965 (1986) (court has broad discretion in considering whether to modify maintenance award). Only if findings are clearly erroneous can they be overturned. V.R.C.P. 52; *Sutton* v. *Sutton*, 147 Vt. 639, 640, 523 A.2d 1249, 1250 (1987). Further, we must "view the evidence in a light most favorable to the prevailing party, and exclude the effect of all modifying evidence." *In re A.C.*, 144 Vt. 37, 41, 470 A.2d 1191, 1193 (1984). The trial court's decisions with regard to support orders are "to be disturbed or remanded by this Court only in the presence of legal error or the absence of factual support for the result." *Romano* v. *Romano*, 133 Vt. 314, 316, 340 A.2d 63, 64 (1975). We find no legal error, and the record adequately supports the trial court's result.

■ In order to modify a child support order, a court must find a "real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 660(a); see *Jacobs* v. *Jacobs*, 144 Vt. 124, 127, 473 A.2d 1165, 1167 (1984) ("A modification of an original order is proper if the petitioner has proven unanticipated, intervening circumstances, fraud, impossibility of performance or unconscionable advantage."). A voluntary reduction of income, however, does

not constitute such a change in circumstances. In *Jacobs*, we held that voluntary reduction of income could not be grounds for reducing a stipulated support order "absent a sufficient reason for the sacrificing of income." 144 Vt. at 127, 473 A.2d at 1167. The Court reached a similar conclusion in *Miller* v. *Miller*, 124 Vt. 76, 197 A.2d 488 (1963). In *Miller*, the father quit a second job in order to spend more time with his family, and petitioned the court to reduce his obligations. We stated that, while the father's goals may be laudable, a court, "with the welfare of the minor children . . . as its first consideration in considering a motion to reduce support payments to such children, cannot properly consider a voluntary lessening of his income . . . as a circumstance justifying a reduction in such payments," *Id.* at 81, 197 A.2d at 492; accord *Romano*, 133 Vt. at 315-16, 340 A.2d at 64 ("The existence of facts indicating a deliberate sacrificing of income in order to reduce a support obligation is condemnable.").

The trial court found that Mr. Garrow "voluntarily left his position" for study or work "in an area which will pay him less than half the salary of his prior job." While the record is not unambiguous on this score, the court's finding is certainly reasonable and not a clear abuse of discretion. On direct examination, Mr. Garrow testified as follows:

Q. Just in general terms, what was the reason or reasons for your termination with the U.S. Customs Service?
A. The reason or reasons? All of them?
Q. Well, why?
A. Okay, I also have documentation for that. I left for . . .
O. In other words, was it . . .
A. Primarily was health reasons. But that's only part of it.
Q. Well, in other words . . .
A. If you're asking me for a partial answer, I'll give you a partial answer. If you want to know the reasons I left, then I've got to be able to say them.
Q. So basically it was for health reasons; is that right?
A. No.

At the close of the hearing, the court asked Mr. Garrow why he made a career change just at the point when it had become "very expensive to raise children." Mr. Garrow answered first that the job was stressful, and then complained at some length of an affair he believed his wife was having with a co-worker. When the court

indicated that he was not being responsive, Mr. Garrow testified: "I left because of the work conditions and the stress. It's documented by my physician. And counseling. He told me to see a counselor." Again, while not unequivocal, the evidence was sufficient to support the court's finding that Mr. Garrow had reduced his income voluntarily, and that he therefore had not met the jurisdictional prerequisite — real, substantial and unanticipated change of circumstances — to consideration of a petition to modify.

■ Mr. Garrow also questions the trial court's findings regarding his financial situation. The court's finding that Mr. Garrow "had gross income at his disposal of $34,000" during the year prior to the hearing, however, is amply supported in the record. Further, the evidence is uncontradicted that he had $6,000 in escrow, the purpose of which was to meet his child support obligations. Nor is the evidence of Mr. Garrow's arrears disputed in the record. We have no cause to overturn any of these findings.

■ We find no merit in Mr. Garrow's other claims in this appeal. Mr. Garrow came to the May 1986 hearing prepared to submit documentation that he believed would substantiate his case. He wanted as well to testify more fully as to his reason for leaving his government job, and wanted the opportunity, through his attorney, to examine Ms. Collins (his former wife) on the witness stand. On all these matters. Mr. Garrow now claims that the trial court was in error by somehow limiting his presentation of evidence. None of these instances, however, involved court action to exclude evidence; on the contrary, when Mr. Garrow's cross-examination was concluded, the court, on its own, sought to elicit from Mr. Garrow his reasons for leaving his job. The examples cited by Mr. Garrow are, rather, instances of disagreement with his attorney. They do not constitute court error.

Mr. Garrow also maintains that the court improperly considered Ms. Collins' written answers to his interrogatories. This too translates to a disagreement with his attorney. Mr. Garrow wanted an opportunity to challenge Ms. Collins' answers; he could have done so had she testified, but his attorney — for what may be perfectly sound reasons — chose not to examine her. In any event, it is not at all obvious that the trial court relied on these answers, or even read them, since they were, according to Mr. Garrow, submitted only on the day of the hearing.

■ Mr. Garrow's claim that the trial court denied his motion because of prejudice against homosexuals is raised for the first time on appeal. It is a fundamental and oft-repeated tenet in our law, however, that matters raised for the first time on appeal are not considered on appellate review. See, e.g., *Lanphere* v. *Beede*, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982). Therefore, we will not consider this claim.

■ Finally, Mr. Garrow claims that the trial court in August and September 1986 had no jurisdiction to entertain Ms. Collins' motion to enforce the divorce decree, since his appeal with the Supreme Court had already been filed. This claim finds no support in the law. "When an appeal has been taken from a judgment in an action for divorce, the court in its discretion may, during the pendency of the appeal, grant or deny motions for modification or enforcement of that judgment . . . . " V.R.C.P. 62(d); see also V.R.C.P. 80(j). The trial court therefore had continuing jurisdiction in this case even after Mr. Garrow's appeal was filed.

*The order of the Franklin Superior Court in this case dated May 28, 1986, is affirmed, and the stay of that order and of orders dated August 25, 1986, and September 9, 1986, is vacated.*