The PEOPLE of the State of Colorado, In the Interest of C.D., a child, Upon the Petition of Pueblo County Department of Social Services, and E.D.M., Petitioners–Appellants, And Concerning C.D., Respondent–Appellee.

No. 88CA0215.

Colorado Court of Appeals, Div. I.

Dec. 22, 1988.

Daniel C. Kender, Pueblo, for petitioners-appellants.

No appearance for respondent-appellee.

HUME, Judge.

The Pueblo County Department of Social Services (Social Services) appeals from an order which modified the child support obligation that the court had previously imposed upon the father of the minor child, C.D. Although the modification order increased the amount of child support required of father, Social Services contends that the court erred in the manner it applied the statutory child support guidelines in this case. We agree, vacate the modification order, and remand for further proceedings.

The court found that father owed a duty to support not only C.D., but also four other minor children born as issue of his relationship with a person other than C.D.'s mother. The four other children apparently were living with father and their mother, and, although no court order required father to support them, the trial court presumed that father owed and was satisfying a legal duty for their support.

The record does not indicate that the court held a hearing concerning the circumstances of the other four children, their living arrangements or need for support, or that it received evidence concerning either father's actual contribution or their mother's duty or ability to contribute to that need. The record consists of child support guideline worksheets prepared for C.D.'s father and her mother, and baptismal certificates indicating that C.D.'s father was also the father of each of the four other children. No information concerning the other children's mother's financial status was provided to the court.

In computing father's support obligation to C.D., the court engaged in a two-step process using the schedule of basic child support obligations codified in § 14-10-115(10)(b), C.R.S. (1987 Repl.Vol. 6B). First, the court used the schedule to adjust and reduce father's gross monthly income by the presumptive child support obligation for five children it found he was obligated to support. Using father's gross monthly income of $1,782, the court determined that under the schedule it would presumptively require $704 per month to support C.D. and the other four children. The court then subtracted that presumptive sum from father's gross monthly income to arrive at his adjusted gross monthly income, $1,078.

In the second step of the process, the court added C.D.'s mother's gross monthly income of $421 to father's adjusted gross monthly income in order to calculate the combined income of both parents and to compute each of C.D.'s parent's percentage share of that combined income. The court then reapplied those figures to the schedule of basic child support to arrive at the

presumptive amount of support for one child, and awarded that sum—$187, as the modified amount of father's monthly support for C.D.

Social Services contends that the court erred in using the schedule of basic child support obligations to calculate an adjustment to father's income for non-ordered support for the other children. We agree.

Section 14–10–115(10)(a)(I), C.R.S. (1987 Repl.Vol. 6B) provides that the presumptive basic child support obligation shall be divided between the parents in proportion to their adjusted gross incomes. Section 14–10–115(10)(a)(II), C.R.S. (1987 Repl.Vol. 6B) defines the term combined gross income as "the combined monthly adjusted gross incomes of both parents," and the term adjusted gross income as "gross income less preexisting child support obligations and [other expenses] actually paid by a parent." That subsection also provides "that the category entitled number of children due support in the schedule means children for whom the parents share joint legal responsibility and for whom support is being sought." Section 14–10–115(7)(d), C.R.S. (1987 Repl.Vol. 6B) provides:

> "The amount of child support actually paid by a parent with an order for support of other children shall be deducted from that parent's gross income. For the purposes of this section 'other children' means children who are not the subject of this particular child support determination."

■ Initially, we note that even if the use of the statutory schedule were a permissible means of determining a parent's non-ordered support obligation to his other children, the court's tally of the number of children due support to arrive at adjusted gross income was erroneous. The court first counted C.D. as one of the children supported by father to reduce his gross income to adjusted gross income. By virtue of the statutory language defining "other children," the court erred in so doing. The court then calculated support for C.D. on the reduced income figure from which her pro-rata share of support had already been subtracted. Hence, even if

use of the schedule had been appropriate, the court erred in deducting an additional amount for C.D. as if she were an "other child." *See* § 14–10–115(10)(a)(II) and § 14–10–115(7)(d), C.R.S. (1987 Repl.Vol. 6B).

■ We conclude, however, that the court's use of the statutory schedule to reduce father's gross income was erroneous for additional reasons. Our conclusion is based upon the plain language of §§ 14–10–115(7)(d) and 14–10–115(10)(a)(II), which authorize and require such adjustments only for court-ordered preexisting child support payments that have actually been made. Those subsections neither require nor provide for automatic reductions for support obligations, preexisting or otherwise, which have been paid without a court order. Nor do they contemplate any adjustments to a parent's gross income for court-ordered child support obligations which have not actually been paid by the obligor.

Inherent in the statutory scheme is a legislative recognition that child support obligations which have been previously imposed by a court have been determined to be both necessary and reasonable in amount in proper judicial proceedings. Non-ordered support obligations, on the other hand, have not been judicially scrutinized either as to their necessity or their reasonableness, and the General Assembly accordingly has not provided for automatic income adjustments based upon those obligations, whether or not they are actually paid.

In addition, jurisdictional and practical impediments render the support schedule an ill-suited device to determine the necessity for, and the reasonableness of, support obligations for persons who are not parties to the proceedings before the court. As illustrated by the circumstances here, the mere fact that a parent may have some legal duty to support other children does not indicate the extent of the support needs of the other children, or whether those needs are or can be met by other persons who are also responsible for their support. Nor does the existence of a legal duty

alone indicate an obligor's actual contribution to those needs. The use of the statutory schedule under these circumstances requires the court to make assumptions concerning these matters which may not be wholly warranted.

We hold, therefore, that non-ordered child support payments to others are not to be determined by a mechanical application of the child support schedule to arrive at an arbitrarily calculated reduction of a parent's gross income as was done here. Rather, the impact that a parent's claimed payment of non-ordered support obligations may have upon his or her ability to provide reasonable support for the obligee in the pending proceedings must be evaluated by the court under the method provided by § 14–10–115(3)(a), C.R.S. (1987 Repl.Vol. 6B). *See In re Marriage of Rosser*, 767 P.2d 807 (Colo.App.1988).

When a party claims that his or her payment to others of a non-ordered support obligation requires a deviation from the presumptive award determined under the guidelines in the pending support proceeding, that party has the burden to prove the claim. The claiming party must prove that a deviation is reasonable and necessary, upon the court's consideration of at least the following factors: whether the non-ordered support obligation is capable of legal enforcement as opposed to an assumed or volunteered undertaking; whether the amount of the obligation to others is reasonable and necessary for the support of those for whom it is paid; whether and to what extent the claimed obligation is actually paid by the claimant; and whether and to what extent that actual payment affects the claimant's ability to meet the presumptively applicable support obligation in the proceeding before the court.

Upon its consideration of such evidence, the court must then determine whether to deviate from the presumptive guideline amount in determining the award to be entered in the pending proceeding. Any such deviation must be accompanied by the court's findings specifying the reasons which justify it.

Accordingly, the support order is set aside and the cause is remanded for the recomputation of the support award for C.D. in accord with the views expressed in this opinion.

PIERCE and MARQUEZ, JJ., concur.