## Merwina A. Isham v. Jeffrey Isham

[568 A.2d 421]

No. 88-258

Present: Allen, C.J., Peck, Gibson and Dooley, JJ.

Opinion Filed October 20, 1989

*Rick Sharp,* Burlington, for Plaintiff-Appellee.

*McNeil, Murray & Sorrell, Inc.,* Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant husband appeals from a superior court order finding him in contempt for failure to pay back child support, directing payment of arrearages, and denying his motion to "annul" his child support obligation either prospectively or retroactively. We affirm.

The parties were divorced on April 9, 1979, and defendant was awarded custody of two of the parties' three children and possession of their residence. Defendant was ordered to pay $25 per week in support payments for the third child who was in plaintiff's custody, but no such payments were made. Plaintiff moved for payment of arrearages, and on September 4, 1985 the trial court ordered that the parties' former residence be sold and that defendant pay the arrearages through August 31, 1985 to plaintiff out of his half of the equity. That order also transferred custody of a second child from defendant to plaintiff and increased the support order to $100 per week.

The marital residence was sold in April, 1986, and the arrearages were deducted from defendant's net sale proceeds under the court's order. By April of 1987, plaintiff was again

seeking to hold defendant in contempt because he failed to make payments under the 1985 order. Defendant thereafter moved to "annul petitioner's duty relating to support," as to both arrearages (about $7100) and future payments, based on claims of substantial and unanticipated changes in circumstances, including his remarriage, the birth of three children in the second marriage, and an employment layoff. The trial court took a very different view of the facts:

> Since the divorce, Defendant has totally ignored his obligation to his children by his first marriage and has voluntarily accrued new obligations to a point where he says he cannot afford to pay any child support, and requests the Court to forgive the arrearage which has accrued since 1986.

Noting that defendant's current wife was earning "substantially more income than he does," the court added:

> Assuming that his current wife was sharing the expenses of their new home and family on an even basis rather than pro rata based on their income, it would appear that the Defendant has the ability to earn sufficient income to pay the child support indicated by the 1985 order.

The trial court granted the motion for enforcement and contempt and denied defendant's motion for relief from prior orders. The present appeal followed.

■ For purposes of this appeal, we must separate the periods involved to look at the accrued child support debt separate from the prospective obligation. Defendant accrued a child support debt of almost $7,000 between the date to which his support obligations were paid by the house proceeds, and September 4, 1987, the date on which he filed a petition to "annul" his support obligation. Any modification could not have gone back earlier than the date of the petition. See *Towne v. Towne*, 150 Vt. 286, 288, 552 A.2d 404, 406 (1988). Thus, defendant's inaction over the period between the house sale and the eventual motion made relief impossible for that period.

■■ As to the future, the court must find a "real, substantial and unanticipated change of circumstances" in order to modify a child support order. 15 V.S.A. § 660(a) (formerly 15 V.S.A. § 758). A voluntary reduction in income available for child support does not constitute a change in circumstances. See *Garrow v. Garrow*, 150 Vt. 426, 428–29, 553 A.2d 569, 571 (1988). The trial court has broad discretion to determine whether it will modify a support order. See *Viskup v. Viskup*, 149 Vt. 89, 91, 539 A.2d 554, 556 (1987).

In this case, there is little disagreement about the underlying facts but a major disagreement over how to characterize those facts. In defendant's view, he had major increases in housing costs (153%) caused by the sale of the marital residence, a major increase in the cost of supporting the children of his second marriage because another child was born and a major decrease in his income because he was laid off from his maintenance mechanic job and had to take a part-time bus driver's job. He argues that all these changes were unanticipated. The trial court found that neither the second family expenses nor the loss of employment was unanticipated and that the combined income of defendant and his second wife was sufficient to meet their living expenses and allow defendant to discharge his support obligation. No doubt the court was influenced by defendant's near total refusal to recognize his support obligations. See *Ohland v. Ohland*, 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982).

■ Based on its findings which are not clearly erroneous, see *Jacobs v. Jacobs*, 144 Vt. 124, 126, 473 A.2d 1165, 1167 (1984), we believe that the decision of the trial court was within its discretion.

■ We note that petitions and the order in this case all came after the effective date of Vermont's support guideline law. See 15 V.S.A. §§ 650–660. Under the current law a 15% deviation from the support guideline would be sufficient to show a change of circumstances so as to require the court to consider whether to modify the support order in light of the guidelines. 15 V.S.A. § 660(b), (c). We have not considered the applicability of the

support guideline law to this case because the parties argued it under the prior law and that has become the law of the case. See *Coon v. State Highway Board*, 125 Vt. 89, 93, 211 A.2d 234, 237 (1965).

*Affirmed.*