2005 VT 89

## Jeffrey Miller v. Megan Miller

[882 A.2d 1196]

No. 04-152

Present: Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned

Opinion Filed July 29, 2005

*Jeffrey Miller*, Pro Se, Winooski, Plaintiff-Appellee.

*Mary G. Kirkpatrick* of *Lisman, Webster, Kirkpatrick & Leckerling, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Johnson, J.** Megan Miller appeals the family court's decision denying her an additional-dependent adjustment under 15 V.S.A. § 656a. Miller asserts that the family court erred by not allowing her to deduct discretionary expenses she spent on her son from June 2003 to the present. We affirm.

¶ 2. The parties are the mother and father of an eight-year-old child named Cole. Mother, Megan Miller, has physical custody of Cole. Father, Jeffrey Miller, shares legal custody of Cole and pays child support to mother for Cole.

¶ 3. Until September 19, 2002, Ryan, mother's child from a prior relationship, lived with mother in Vermont. Because Ryan was living with her, mother received a $404 monthly additional-dependent adjustment that reduced her available income in the child-support worksheet for Cole, and thus increased father's support obligation. After Ryan moved out of mother's home to live with his father Christopher Gogan in Maine, father petitioned to modify the child-support order for Cole. Father argued that Ryan's move was a real, substantial, and unanticipated change of circumstances that made mother ineligible for the additional-dependent adjustment.

¶ 4. The magistrate ruled in favor of father in June 2003, holding that mother was ineligible for an additional-dependent adjustment because mother no longer had a duty to support Ryan. The magistrate reasoned that because Ryan was now living with Gogan in Maine and mother was not providing for Ryan's needs on a daily basis, mother had more available income to spend on Cole. Although the magistrate recognized that mother provides some support for Ryan by purchasing items that he "needs," the magistrate characterized mother's expenditures as "voluntary payments ... made at her sole discretion" because she was not obligated to pay any sums for Ryan's benefit by a formal child-support order. Without the additional-dependent adjustment for Ryan, mother's monthly available income figure increased, thus reducing father's support obligation for Cole.

¶ 5. In September 2003,[1] mother and Gogan stipulated to their parental rights and responsibilities for Ryan. Gogan assumed sole physical custody, while both parents agreed to share legal custody. As a result of the stipulation, mother and Gogan modified their child-support order for Ryan. The October 30, 2003 child-support order stated that mother was obligated to pay Gogan $89 per month. This amount was reduced to $0 to settle the parties' claims against each other for unpaid child support allegedly owed. Mother claimed that Gogan did not pay child support when Ryan was living with her prior to his move to Maine, and Gogan alleged that mother owed arrears for the 2002-2003 year that Ryan lived with him in Maine. In consideration of the arrears, costs mother incurs when she travels to Maine to visit Ryan, and the cost of support when Ryan visits mother in Vermont, the parties agreed to nullify mother's legal child-support obligation.

¶ 6. In October 2003, mother moved to modify the magistrate's June 2003 order seeking to regain an additional-dependent adjustment for money she spent on Ryan. The magistrate denied the motion on December 4, 2003. The magistrate made findings on the amount of time Ryan spent with mother in Vermont: two nights in September and October 2003, five nights in November 2003, an estimated ten nights in December, and seven nights in February and April 2004. The magistrate also found that mother purchased hockey equipment and clothing for Ryan. Consistent with the previous order, the magistrate ruled that the overnights and voluntary expenditures on miscellaneous items did not make mother eligible for an adjustment because Gogan was still Ryan's primary custodian.

¶ 7. Mother appealed both of the magistrate's orders to the family court. The family court affirmed on March 8, 2004, concluding that a noncustodial parent, like mother, can claim an adjustment only if she meets "the burden of proving the extent and nature of [her] financial responsibility for the additional child." The court broadened the magistrate's test, making it possible for noncustodial parents to be eligible for an adjustment upon showing that they have assumed a duty to provide for their additional child's needs by spending sums that are comparable to the guideline amount on food, housing, and clothing. Applying this standard, the court affirmed the magistrate's decision that mother did not demonstrate her eligibility for an adjustment.

---

[1] We note that the parties entered into the stipulation in September 2003, but the agreement was not incorporated into a court order until October 30, 2003.

¶ 8. On appeal, mother contends that the family court erred by not allowing her to receive an additional-dependent adjustment for her financial contributions to support Ryan, including travel expenses when she visits Ryan in Maine, costs incurred when Ryan visits Vermont, and miscellaneous items mother purchased for Ryan, such as sports equipment.

¶ 9. The issue in this case is whether a noncustodial parent may claim an additional-dependent adjustment under 15 V.S.A. § 656a. We hold that noncustodial parents are not eligible for a § 656a income adjustment for additional dependents because this section allows only custodial parents who provide primary child support and spend the child-support guideline amount to receive an adjustment. As a noncustodial parent, mother is not, therefore, eligible for an additional-dependent adjustment.

¶ 10. Whether the family court properly construed § 656a is a question of law that we review de novo. *Office of Child Support v. Sholan*, 172 Vt. 619, 620, 782 A.2d 1199, 1202 (2001) (mem.).

¶ 11. Section 656a provides that, "[i]n any proceeding to establish or modify child support, the total child support obligation for the children who are the subject of the support order shall be adjusted if a parent is also responsible for the support of additional dependents who are not the subject of the support order." 15 V.S.A. § 656a(b). The statute defines "additional dependents" as "any natural and adopted children and stepchildren for whom the parent has a duty of support." *Id.* § 656a(a). The statute does not define "duty of support," nor does it specify whether a noncustodial parent, such as mother, is eligible for the adjustment.

¶ 12. In Vermont, child support is controlled by statute. Section 654 orders the Secretary of Human Services to prescribe by rule a guideline for family courts to determine child-support awards. The guidelines "reflect[] the percent of combined available income which parents living in the same household in Vermont ordinarily spend on their children." *Id.* § 654. As the guidelines are based on what a two-parent household hypothetically spends in support, the actual expenditures of each parent are irrelevant in calculating support orders under the guidelines. Family courts use the guidelines to determine the total support obligation, then divide this amount between the parents based on their respective incomes. The Legislature's primary goal in enacting this uniform system was to make child-support awards more predictable. *Ainsworth v. Ainsworth*, 154 Vt. 103, 106, 574 A.2d 772, 775 (1990).

¶ 13. The Legislature enacted specific provisions to address the unique financial situations of parents that the fixed child-support guidelines do not recognize. For example, the Legislature enacted the additional-dependent-adjustment statute in 1990 following our decision in *Ainsworth*, 154 Vt. 103, 574 A.2d 772, to ensure that the economic effects of additional dependents are considered in establishing child-support orders. *Tetreault v. Coon*, 167 Vt. 396, 400-01, 708 A.2d 571, 575-76 (1998). Prior to the additional-dependent-adjustment statute, parents with other child-support obligations could receive an income adjustment only if they had a preexisting support order. 15 V.S.A. § 653(1)(A). *Ainsworth* brought to this Court's attention the insufficiency of the child-support statute in addressing the costs of other dependents. In *Ainsworth*, the issue was whether the family court could deviate from the child-support guidelines under § 659 when it would be inequitable to require a parent providing support to a child of a second family to pay the full guideline amount to support a child from a first marriage. *Ainsworth*, 154 Vt. at 104, 574 A.2d at 773. We held that family courts could deviate from the guideline amount to consider the expenses of a custodial parent providing for children of a second family. *Id.* at 112, 574 A.2d at 777-78. We reached this conclusion by analyzing the statutory purposes of the child-support guidelines. Because we found that custodial parents spend the guideline amount to support children who live with them, we concluded that the family court could base the child-support deduction on the guideline and would not need to deduct an arbitrary amount. See *id.* at 111, 574 A.2d at 776 (paralleling the expense obligations of parents under court order to parents providing for second families). Thus, we found that our decision would not undermine the Legislature's goals of limiting judicial discretion and making child-support awards more predictable. See *id.* at 110-11, 574 A.2d at 777.

¶ 14. We again rely on the statutory language and purposes of the child-support guidelines in this case. In construing a statute, our paramount goal is to discern and implement the intent of the Legislature. *Colwell v. Allstate Ins. Co.*, 2003 VT 5, ¶ 7, 175 Vt. 61, 819 A.2d 727. "We interpret the statute as a whole, looking to the reason and spirit of the law and its consequences and effects to reach a fair and rational result." *In re Margaret Susan P.*, 169 Vt. 252, 262, 733 A.2d 38, 46 (1999). Although the additional-dependent-adjustment statute does not define what qualifies as a "duty of support," we discern the Legislature's intent to restrict eligibility to custodial parents from the stat-

ute's requirement that family courts base the adjustment on the child-support guidelines.

¶ 15. Section 656a(b) explains how the family court must calculate the additional-dependent adjustment:

> The adjustments shall be made by calculating an amount under the guidelines to represent the support obligation for additional dependents based only upon the responsible parent's available income, without any other adjustments. This amount shall be subtracted from that parent's available income prior to calculating the total child support obligation based on both parents' available income as provided in section 655 of this title.

This adjustment is a strict calculation based on the child-support guidelines. The Legislature's use of "shall" in the statute indicates that the family court judge does not have discretion to calculate independently the additional-dependent deduction using a formula other than that provided in the guidelines. See *State v. Rafuse*, 168 Vt. 631, 632, 726 A.2d 18, 19 (1998) (mem.) ("Statutes generally use 'shall' as imperative or mandatory language."). Rather than allowing the family court to determine the amount of the additional-dependent adjustment based on the parent's actual expenses for the dependent, the additional-dependent-adjustment calculation is standardized by statute. Once the judge determines the amount of the adjustment based on the guidelines, it is subtracted from the parent's monthly available income on the child-support worksheet. 15 V.S.A. § 656a(b). After the adjustment is applied, the judge calculates the support obligation of each parent in proportion to their share of income. *Id.* § 656(a) ("child support obligation shall be divided between the parents in proportion to their respective available incomes").

¶ 16. By requiring additional-dependent adjustments to be based on the guidelines, the Legislature indicated its intent that only parents providing support equivalent to the guidelines would be eligible for the deduction. The duty of providing an additional child primary support by supplying food, housing, and clothing falls to the custodial parent, and therefore, the law presumes that the custodial parent alone spends the full guideline amount to meet these needs. If a parent is not providing primary support, the parent is not eligible for a full guideline deduction. Thus, the voluntary contributions of a noncustodial parent cannot be deducted because the child-support guidelines assume that the custodial parent is providing for the majority of the child's basic

needs. In this case, because mother does not have a child-support obligation or custody of Ryan, any support she provides is voluntary in that Ryan does not rely on it for support. Thus, she does not have a "duty of support" as that term is used in 15 V.S.A. § 656a(a).

¶ 17. If we were to construe the statute as mother argues, the result would be contrary to the goals of the child-support guidelines. The child-support guidelines have three main purposes. The first purpose is to ensure that child-support orders "'reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the marriage not been dissolved.'" *Ainsworth*, 154 Vt. at 106, 574 A.2d at 774 (quoting 15 V.S.A. § 650). The second purpose is to standardize child-support awards for similarly-situated parties by narrowing or eliminating judicial discretion. *Id.* at 106, 574 A.2d at 775 (citing R. Williams, *Guidelines for Setting Levels of Child Support Orders*, 21 Fam. L.Q. 281, 282 (1987)). The third purpose is to increase the efficiency of child-support adjudication and increase the number of settlements by making support awards more predictable. *Id.* Thus, the child-support guidelines aim to standardize child-support awards and provide stability to children by basing the support award amount on each parent's income so that children enjoy a similar standard of living after divorce.

¶ 18. Review of the magistrate's decision is based on the record made before the magistrate. *Tetreault*, 167 Vt. at 399, 708 A.2d at 574. Findings of fact shall not be set aside unless clearly erroneous. *Id.*

¶ 19. The magistrate found that: Ryan spends about one weekend a month in Vermont with mother; mother spends about one weekend a month in Maine; Ryan comes to Vermont for long weekends and school vacations; and Ryan was expected to spend the summer of 2004 in Vermont. The magistrate also found that mother made discretionary purchases for Ryan, such as hockey equipment and clothing. While these overnights spent in Vermont would enter into a child-support-award analysis to determine the amount of time the child spends with each parent, they are irrelevant to determining additional-dependent-adjustment eligibility. The child-support guidelines created a uniform standard for child-support awards so that the family court would not need to determine whether a parent's expenditures were sufficient to qualify for an adjustment. To limit judicial discretion and ensure the predictability of child-support awards, § 656a allows only for full guideline deductions, and thus assumes that the parent claiming the adjustment spends the guideline amount. Accordingly, the time moth-

er spends with Ryan and the individual expenditures on travel, sports equipment, and clothing do not enter into a § 656a analysis.

¶ 20. Because the additional-dependent-adjustment statute allows only for full guideline deductions, mother cannot receive an $89 income adjustment under § 656a. Mother argues that she is entitled to the $89 that she would owe in child support for Ryan had her obligation not been reduced to $0 to settle child-support arrears. Although the child-support worksheet recognizes time Ryan spends with mother in calculating the $89 figure,[2] § 656a is not the statutory section that allows noncustodial parents to have their child-support expenses deducted. Section 656a allows only for full guideline deductions; partial adjustments based on actual expenditures are not permitted. Thus, mother cannot receive an income adjustment of $89 under § 656a.[3]

¶ 21. For the above reasons, we hold that noncustodial parents are ineligible for the additional-dependent adjustment. Because mother is a noncustodial parent, we affirm.

*Affirmed.*

---

[2] The child-support order for Ryan that the parties settled down to $0 was calculated based on Ryan spending forty percent of his time with mother. But mother has no physical custody rights and no specified visitation schedule that incorporates this percentage or otherwise indicates that mother is entitled or required to spend this much time with Ryan. The magistrate refused to adopt the forty percent visitation schedule into his findings because, as noted on the child-support order from which this schedule is derived, mother and Gogan agreed to the sixty/forty percent split only for purposes of calculating the child-support obligation that was part of the settlement.

[3] In her appellate brief, mother speculates about whether she would be eligible for an $89 deduction under 15 V.S.A. § 653(1)(A) had her settlement with Gogan not reduced that obligation to $0. She notes that the $89/$0 order was not a preexisting obligation as it was not imposed until after the order for Cole was first issued. Mother did not pursue a deduction under that section; therefore, we will not issue an advisory opinion on her hypothetical eligibility under § 653(1)(A).