STATE OF VERMONT
SUPERIOR COURT  -  ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| | } | |
| **In re Tyler Self-Storage Units Permit** | } | **Docket No. 189-9-09 Vtec** |
| | } | |

**Decision on Cross-Motions for Summary Judgment**

This matter arose after the Town of Dorset Zoning Board of Adjustment ("ZBA") denied an application filed by Bradford Tyler ("Applicant") for a zoning permit to construct and operate a self-storage facility with seventy-two rental bays on property located at 340 Vermont Route 30 in the Village Commercial Zoning District of the Town of Dorset ("Town"). Applicant thereafter filed a timely appeal of the ZBA's decision to this Court. A group of sixty-three property owners and/or voters in the Town (collectively "Neighbors") also filed an appeal in this matter, generally expressing opposition to the proposed project.

Neighbors are represented by Robert E. Woolmington, Esq.; Applicant is represented by David R. Cooper, Esq.; the Town, which has entered an appearance in these proceedings, is represented by Joseph J. O'Dea, Esq.

Neighbors and Applicant have filed cross-motions for summary judgment, raising a single issue: whether Applicant's proposed self-storage facility is a permitted use in the Village Commercial Zoning District ("VC District"). The Town has not filed a response to either motion, but the principal parties to this litigation have filed their respective memoranda in opposition, making the pending motions ripe for review.

**Factual Background**

For the sole purpose of putting the pending cross-motions into context, we recite the following facts, all of which we understand to be undisputed:

1. Applicant owns and resides on a 5.6-acre property located at 340 Vermont Route 30 in the VC District of Dorset.

2. On January 30, 2009, Applicant filed an application for a zoning permit to construct three self-storage buildings on his property. Each proposed building would be one-story tall, twenty feet wide, and one hundred feet long; each 2,000-square-foot building would house twenty-four

storage bays, for a total of seventy-two bays. Applicant intends to rent the storage bays to individual customers for their personal storage needs.

3. "Retail sales/rentals" are permitted uses in the VC District, subject to site development plan approval. Town of Dorset Zoning Bylaws § 6.3.4(b)(3) [hereinafter "Bylaws"].

4. On February 13, 2009, the Town Zoning Administrator referred Applicant's application to the Town Planning Commission for site development plan review. The Commission approved Applicant's site development plan by written decision on April 16, 2009. This decision was not appealed and has therefore become final. 24 V.S.A. § 4472(d).

5. Following site plan approval, the Zoning Administrator on May 21, 2009, issued Applicant Zoning Permit No. F-3-09, which authorized the construction of three self-storage buildings on Applicant's property.

6. Neighbors appealed the Zoning Administrator's decision to the ZBA on June 4, 2009, contending that a self-storage facility is not "retail sales/rentals," as that phrase is used in Bylaws § 6.3.4(b)(3). A public hearing was held, and on August 31, 2009, the ZBA issued a written decision that voided Zoning Permit No. F-3-09. Four members of the ZBA determined that Applicant's self-storage facility did not constitute a permissible use in the VC District; three members dissented; the two remaining members of the nine-member ZBA did not vote.

7. After Applicant voiced concerns about the validity of the ZBA's decision, Neighbors appealed to this Court on September 29, 2010. Neighbors contend that, if the ZBA's decision was invalid, then the Zoning Administrator's decision to issue the permit was in error and should be voided.

8. Applicant filed a cross-appeal on September 30, 2009, contending that the ZBA's decision to void the zoning permit does not constitute a valid decision because it was not reached by a majority of the nine-member ZBA.[1] Even if the ZBA's decision was valid, Applicant maintains that the proposed self-storage facility is a permitted use in the VC District, and he requests that Permit No. F-3-09 be reinstated.

---

[1] Applicant's notice of appeal implied that his application should be deemed approved by virtue of the ZBA's failure to reach a decision supported by the majority of its members. This argument is noticeably absent from any subsequent filings, which we take to mean that Applicant has chosen not to pursue relief under the deemed approval doctrine. See generally, In re McEwing Servs., LLC, 2004 VT 53 ¶ 21, 177 Vt. 38 (noting that technical defects in the decision-making process do not warrant the application of the deemed approval doctrine).

**Discussion**

The sole issued raised by the pending motions is whether Applicant's proposal to construct and operate a self-storage facility with seventy-two rental bays, which he intends to rent to individual customers for their personal storage needs, is a permitted use in the VC District.

The Bylaws permit a number of uses in the VC District; the following use is permitted, subject to site plan approval:

> Retail sales/rentals. All sales, storage and display of merchandise shall occur within an enclosed structure, except for temporary display of merchandise outdoors, on-site during the operating hours of the business or from 8:00 a.m. to 6:00 p.m., whichever is later, provided that all such merchandise is stored in a building or screened storage area at the close of business each day. Agricultural products are exempted from the outdoor storage restrictions. No sale of automotive or diesel fuel is permitted.

Bylaws § 6.3.4(b)(3). Neighbors interpret this provision as authorizing "retail sales" and "retail rentals," and they contend that a self-storage facility is not a "retail rental" use. Applicant, on the other hand, interprets § 6.3.4(b)(3) as permitting "retail sales" and all "rentals." He contends that the proposed self-storage facility is clearly a permitted rental activity. Applicant argues in the alternative that, if Bylaws § 6.3.4(b)(3) only authorizes "retail rentals," he is nonetheless entitled to a zoning permit because his proposed self-storage facility constitutes a "retail rental" use. Both Applicant and Neighbors seek a summary ruling on these legal questions. Neither party suggests that a fact material to these legal questions is in dispute; the parties merely dispute the proper application of the applicable law to the undisputed material facts.

Our review of the pending motions must begin with the reminder that summary judgment is appropriate only "when there are no genuine issues of material fact and, viewing the evidence in a light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." In re Carter, 2004 VT 21, ¶ 6, 176 Vt. 322; V.R.C.P. 56(c). "When both parties move for summary judgment, each is entitled to the benefit of all reasonable doubts and inferences when the opposing party's motion is being judged." City of Burlington v. Fairpoint Commc'ns, 2009 VT 59, ¶ 5 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)). We review the foregoing arguments in this light.

When called to interpret zoning bylaws, we employ the familiar rules of statutory construction. In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991). The Court's paramount goal is "to

3

discern and give effect to the intent of the [bylaws' drafters]." Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273. "The definitive source of [their] intent is the [bylaws'] language, by which we are bound unless it is uncertain or unclear." In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584 (mem.). Words are therefore construed "according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). If the plain language "resolves the conflict without doing violence to the legislative scheme, there is no need to go further." In re Casella Waste Management, Inc., 2003 VT 49, ¶ 6, 175 Vt. 335 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). "If there is no plain meaning, we attempt to discern the intent from other sources without being limited by an 'isolated sentence.'" Stowe Club Highlands, 164 Vt. at 279 (quoting Williston Citizens for Responsible Growth v. Maple Tree Place Assocs., 156 Vt. 560, 563 (1991)). If any uncertainty exists, however, we must construe the land use regulations in favor of the applicant/property owner, since zoning bylaws are considered to be in derogation of common law property rights and therefore must be "strictly construed." In re Weeks, 167 Vt. 551, 555–56 (1998) (citations omitted).

As is explained more fully below, we conclude that the plain language in Bylaws § 6.3.4(b)(3)—"retail sales/rentals"—evidences that the drafters intended to permit in the VC District only "retail rentals," not all rental activities. We start by noting that a virgule (i.e., a forward slash) is not itself ambiguous. It is used to separate alternative choices, and a number of other jurisdictions have concluded that a virgule unequivocally symbolizes "or." See, e.g., Danco, Inc. v. Commerce Bank/Shore N.A., 675 A.2d 663, 666 (N.J. Super. Ct. App. Div. 1996) (citing cases). By replacing the virgule in § 6.3.4(b)(3) with an "or," we derive a provision that authorizes "retail sales [or] rentals."

Next, by applying a common rule of statutory construction, we conclude that retail is an adjective that modifies both sales and rentals. The rule of ejusdem generis explains that "[w]hen words of a statute bearing a specific description are followed by words of more general import, the sense of the adjective first used is applied to all the words that follow. The latter words are held to include only those things similar in character to those specifically defined." Kalakowski v. John A. Russell Corp., 137 Vt. 219, 224 (1979); In re Wal-Mart Stores, Inc., 167 Vt. 75, 84 (1997) ("[G]eneral terms that follow specific terms are limited or restricted to those earlier specified, and will not include any classes greater than those to which the particular words

4

belong."). In other words, the word "retail" is applied to all the words that follow, such that the word "rental" is limited to a class of uses similar to "retail sales." Although not a model of clarity, we conclude that Bylaws § 6.3.4(b)(3) is unambiguous when construed according to the principle of ejusdem generis. See, e.g., Kalakowski, 137 Vt. at 223–24 (concluding that "retail" modified "sales" in a provision that conditionally permitted a "[r]etail store, stand, sales and sales rooms"). It is clear from the statutory rules we employ here that the drafters intended § 6.3.4(b)(3) to authorize "retail sales [or retail] rentals" in the VC District.[2]

This interpretation is more favorable than one permitting all rental uses in the VC District. Not only does it effectuate the drafters' intent, but it also comports with the overall zoning scheme. The organization of the Bylaws evidences the intent to locate certain rental activities within the Town's two other commercial zoning districts: "rentals of vehicles, equipment and machinery" are permissible in the separate Commercial-Industrial Two ("CI-2") District, and "wholesale distributors" are permissible in the Commercial-Industrial One ("CI-1") District. Bylaws §§ 6.2.2(b)(7) & 6.2.3(5). Allowing all rental activity to occur within the VC District, including wholesale rentals and industrial machinery rentals, would undermine the Town's efforts to limit such rental activities to the CI-1 and CI-2 Districts. Accordingly, we conclude that the drafters intended "retail rentals" to be the only rental activities permitted in the VC District.

While we reject Applicant's argument that all rental uses are permitted in the VC District, Applicant is not foreclosed from securing a zoning permit for his proposed use. Applicant's proposed self-storage facility is permissible if it qualifies as a "retail rental," as that phrase is used in Bylaws § 6.3.4(b)(3). Unfortunately, the Bylaws do not define "retail rentals." They do define "retail," but the definition causes some consternation for the Court because it is phrased exclusively in terms of sales. "Retail . . . [r]efers to a shop or store for the sale of goods, commodities, products or services directly to the consumer, as opposed to wholesale." Bylaws app. A. This definition thus provides little indication that rental activities were to be included as

---

[2] We note here that the drafters utilize a virgule throughout the Bylaws, and its repetitious use adds support to our conclusion that the drafters intended "retail sales/rentals" to authorize "retail rentals," as opposed to all "rentals." For example, "[a]n automobile maintenance/repair business" is a conditional use in the VC District. Bylaws § 6.3.5(3). The most reasonable interpretation of this provision is to conditionally permit only "automobile repair businesses," not all "repair businesses."

retail uses.[3]  But the drafters must have intended the word "retail" to undertake some meaning in Bylaws § 6.3.4(b)(3) as the word is used to modify "rentals."  See In re Miller, 2009 VT 36, ¶ 14 ("We have long presumed that all language in a statute or regulation is inserted for a purpose." (quotations and citations omitted)).  We must therefore determine what constitutes "retail rentals," as that phrase is used in Bylaws § 6.3.4(b)(3), and two different analytical paths lead us to one conclusion.  As is discussed below, we conclude that the "retail rental" uses allowed in the VC District involve small-quantity rentals directly with a consumer, as opposed to wholesale rentals.

On the one hand, we can look to the plain meaning of the phrase "retail rentals" for guidance.  When words or phrases are not defined in the Bylaws, they "retain their dictionary meaning as found in any readily available dictionary, unless such meaning[] run[s] counter to the purposes and objectives" of the Bylaws or Town Plan.  Bylaws app. A.  The dictionary most readily available to the undersigned does nothing to illuminate the meaning of "retail rentals."  Not only is the full phrase absent from the dictionary, but "retail" is also defined by the dictionary in terms of sales: "[t]he sale of commodities in small quantities to the consumer."  The American Heritage Dictionary of the English Language 1109 (1st ed. 1979).  Relying upon the dictionary to provide meaning for the phrase "retail rentals" is ultimately unhelpful because it renders a self-contradicting phrase.

Despite the internal inconsistencies, we believe that the drafters' true intent can be derived from the aforementioned definitions of "retail."  It is apparent from the two definitions that "retail" is intended to distinguish wholesale transactions from small-quantity transactions with an individual consumer.  Both definitions emphasize transacting directly with the consumer.  With this indirect guidance in mind, we conclude that the use of "retail" to modify "rentals" in Bylaws § 6.3.4(b)(3) serves the purpose of distinguishing permissible rental activity from impermissible industrial or wholesale rentals.[4]

---

[3]  One alternative interpretation, not suggested by either party or specific reference in the Bylaws, is that the provision allows "service rentals" because the definition of retail includes service providers.  Applicant's proposed project may constitute a "service rental" in that he proposes to store individual customers' belongings in individual storage units on his property.

[4] Contrary to Applicant's belief, the term "wholesale rentals" is not oxymoronic.  See, e.g., Industrial Strength, AV Wholesale Rental, http://www.industrialstrengthstaging.com/ (last visited July 8, 2010) (providing wholesale rentals to production companies).

On the other hand, the literal definition of "retail" in the Bylaws is not controlling when it clearly defeats the drafters' intent. See Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129 (explaining that legislative intent must prevail when "the literal meaning of the words is inconsistent with legislative intent"). "It is a fundamental and well settled rule of construction, that the true meaning of the Legislature is to be ascertained not from a literal sense of the words used, but from a consideration of the whole and every part of the statute, the subject matter, the effect and consequences and the reason and spirit of the law." Noble v. Fleming's Estate, 121 Vt. 57, 59 (1959). Although the literal definition of "retail" excludes rental activity from retail uses, the spirit of the definition suggests that "retail rentals" involves rental transactions directly with the consumer, as opposed to wholesale rentals. It appears clear to this Court that the purpose behind using the term "retail" in Bylaws § 6.3.4(b)(3) was to distinguish permissible retail transactions from impermissible wholesale transactions, because "retail" involves transacting "directly with the consumer as opposed to wholesale." Bylaws app. A.

In determining that "retail rentals" involves small-quantity rentals directly with a consumer, we specifically reject Neighbors argument that permissible retail uses must operate as a store or shop to satisfy the definition of "retail" in the Bylaws. See Bylaws app. A. (defining retail as "a shop or store for the sale of goods, commodities, products or services"). As we discussed above, the Bylaws' literal definition of "retail" does not apply to rental activities; it is phrased in terms of sales. Further, even if "retail rentals" were only permitted in a store or shop, we conclude that Applicant's proposed self-storage facility constitutes a store or shop. We have no suggestion in the record before us that it does not.

The Bylaws do not define either term, but the dictionary defines a store as "[a] place where merchandise is offered for sale; a shop." The American Heritage Dictionary of the English Language 1271 (1st ed. 1979). A shop is "a small retail store or specialty department in a larger store," but also "[a]ny commercial or industrial establishment." Id. at 1197. Applicant provides a plethora of definitions from a variety of dictionaries that derive a similar meaning: a shop or store is a business or commercial enterprise. Under this definition, Applicant's proposed self-storage facility is a store or shop; it is a commercial establishment.

Neighbors next contend that retail sales and retail rentals must deal in merchandise to be permitted in the VC District. In support, they argue that the remaining language in Bylaws § 6.3.4(b)(3) restricts permissible retail uses to those that deal in merchandise. It says:

> All sales, storage and display of merchandise shall occur within an enclosed structure, except for temporary display of merchandise outdoors, on-site during the operating hours of the business or from 8:00 a.m. to 6:00 p.m., whichever is later, provided that all such merchandise is stored in a building or screened storage area at the close of business each day.

Bylaws § 6.3.4(b)(3). Although the provision refers to merchandise, it does not require all retail activities to deal in merchandise; it merely restricts where merchandise can be sold, stored, or displayed if the retail use deals in merchandise. Applicant does not intend to rent merchandise, nor does he intend to continuously display merchandise outside. Further, not all permissible retail uses deal in merchandise. In fact, the definition of "retail" expressly encompasses "service" providers. See Bylaws app. A (defining retail). Interpreting Bylaws § 6.3.4(b)(3) to prohibit retail service providers within the VC District because they do not generally sell or rent merchandise would render meaningless that part of the definition of retail. We cannot adopt such a construction. In re Dunnett, 172 Vt. 196, 199 (2001) (refusing to interpret a statute in a way that renders language surplusage). Thus, we conclude that Applicant's proposal does not conflict with the restrictions contained in § 6.3.4(b)(3).

In light of the foregoing discussion, the Court interprets Bylaws § 6.3.4(b)(3) to permit "retail sales or retail rentals" in the VC District. "Retail rentals" are activities that involve renting directly to a customer, as opposed to wholesale or industrial rentals. Any on-site merchandise must be stored within the building unless temporarily displayed outside during daylight operating hours, but a retail business need not deal in merchandise to be permitted. This interpretation effectuates the drafters' intent and is the most reasonable construction of the Bylaws. See Fraser v. Sleeper, 2007 VT 78, ¶ 12, 182 Vt. 206 (explaining that we have a duty to interpret the bylaws "in favor of [a] reasonable construction").

## Conclusion

For all the reasons more fully discussed above, we **GRANT** Applicant summary judgment and **DENY** Neighbors summary judgment, concluding that Applicant's proposed self-storage facility is a permitted use in the VC District. The three buildings and seventy-two rental bays, which will be rented to individual customers for their personal storage needs, qualify as a retail rental use that is permitted under Bylaws § 6.3.4(b)(3). Accordingly, we vacate the ZBA's

determinations, and hereby reinstate Zoning Permit No. F-3-09, first issued by the Town of Dorset Zoning Administrator on May 21, 2009.[5]

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court concerning this appeal.

Done at Berlin, Vermont, this 9th day of July 2010.

_____
Thomas S. Durkin, Judge

---

[5] Neighbors request that the Court abstain from issuing a judgment that grants Applicant a zoning permit, explaining that Applicant's proposal may be subject to additional zoning requirements. Whether Applicant's proposal requires additional zoning permits, however, is not an issue that has been presented for our review in this appeal. The only issue raised by the parties' Statement of Questions is whether Applicant's proposal is a permitted use in the VC District. By answering in the affirmative, this Decision addresses all legal issues presented in this appeal. Since our legal analysis causes us to conclude that the proposed project fits within the term "retail rentals," as used in Regulations § 6.3.4(b)(3), we have reinstated the original zoning permit issued on May 21, 2009.