STATE OF VERMONT

SUPERIOR COURT                    ENVIRONMENTAL DIVISION

|  |  |
|---|---|
| In re Musto Construction Permit } | Docket No. 132-7-09 Vtec |
| (Appeal of Hignite) } | |

Decision and Order on Motions to Alter, Amend, and Clarify

Appellant Carolyn K. Hignite appealed from a decision of the Development Review Board (DRB) of the Town of Castleton, granting approval to Appellee-Applicants David and Martha Musto to construct a year-round residence. Appellant is represented by Mark L. Sperry, Esq.; Appellee-Applicants (Applicants) are represented by Gary R. Kupferer, Esq. and Timothy Budd, Esq.; and Interested Party Allan Keyes, Esq., an attorney licensed in Vermont, entered an appearance representing himself. The Town of Castleton did not enter an appearance in this matter.

The Court issued a decision on the merits of the case on January 27, 2011 (the January Decision), concluding that the proposed house could not be approved under § 709(A)(3) of the Zoning Ordinance because substantial portions of the proposed house would extend into areas of the setbacks that are not now occupied by the existing nonconforming structure. Both Appellant and Applicants moved to alter and amend the opinion.

Standard Applicable to Motions to Alter or Amend

Vermont Rule of Civil Procedure 59(e), which is substantially identical to Federal Rule 59(e), "gives the court broad power to alter or amend a judgment on motion within ten days after entry thereof." Drumheller v. Drumheller, 2009 VT 23,

1

¶ 28 (citing V.R.C.P. 59, Reporter's Notes). Rule 59(e) is a codification of the trial court's "inherent power to open and correct, modify, or vacate its judgments." Id. (citing West v. West, 131 Vt. 621, 623 (1973)); see also In re Benning Accessory Use Permit, 184-9-09 Vtec, slip op. at 2 (Vt. Envtl. Ct. June 16, 2010) (Wright, J.) (considering a "request for clarification" as a motion to alter or amend under V.R.C.P. 59(e)).

A Rule 59(e) motion "allows the trial court to revise its initial judgment if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enterprises, Inc., 164 Vt. 582, 588 (1996) (citing In re Kostenblatt, 161 Vt. 292, 302 (1994)). More specifically, the limited functions of a motion to alter or amend a judgment are "to correct manifest errors of law or fact on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the controlling law." In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil § 2810.1 (2d ed. 1995)); see also Appeal of Van Nostrand, Nos. 209-11-04 & 101-5-05 Vtec, slip op. at 4 (Vt. Envtl. Ct. Dec. 11, 2006) (Durkin, J.). Rule 59(e) should not be used to "relitigate old matters or to raise arguments or present evidence that could have been raised prior to entry of the judgment." South Village Communities, LLC, No. 74-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 14, 2006) (Durkin, J.) (quoting Wright, Miller, & Kane § 2810.1). The movant's mere disagreement with the Court's decision is not grounds for reconsideration. In re Boutin PRD Amendment, No. 93-4-06 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 18, 2007) (Wright, J.).

<u>Applicants' Motion to Amend or Clarify the Judgment</u>

Applicants ask the Court to amend, to clarify or to "supplement" its decision by "confirming" their understanding that a proposal that would be three stories in height, but not larger in extent than the footprint of the existing structure, would be eligible for approval under § 709(A)(3).

In ruling that certain portions of the proposed new house do not comply with §709(A)(3), the Court stated that:

> [w]hile certain areas of the volume of the proposed new house—those below the ground surface, those within what would have been a second story above the existing house, and those complying with the setbacks—would be eligible for consideration under § 709, other areas of the volume of the proposed new house violate § 709(A)(3).

January Decision at 8.

This statement does not rule that the described areas of the proposed house would be approved; it merely states that they could be considered under § 709. Specifically, the Court has not ruled, and does not have before it, whether or how § 709(B) may be applied to an addition of a second story if a full basement is also being installed below the non-conforming structure; nor does it have before it what standards would be applicable in a DRB decision under that section.

Applicants' request essentially asks the Court to decide whether a hypothetical alternative proposal consisting of three stories, but not larger in footprint than the footprint of the existing house, would be eligible for approval under § 709. The Vermont Constitution prohibits the Court from issuing advisory opinions; the Court does not give "solicited legal advice in anticipation of issues," that is, before those issues are ripe for the Court's consideration in a proper appeal. <u>Baker v. Town of Goshen</u>, 169 Vt. 145, 151–52 (1999) (quoting <u>Wood v. Wood</u>, 135 Vt. 119, 121 (1977)). It is for the DRB in the first instance, and not for the Court, to consider the issues that divide the parties. See <u>In re Maple Tree Place</u>, 156 Vt. 494,

3

500 (1991) ("addressing new issues never presented to the [DRB] and on which interested persons have never spoken in the local process" is beyond the permissible role of the court as an appellate tribunal).

Applicants are essentially asking the Court to advise them on how to design a house that could be approved under the Zoning Ordinance. Until such a proposal has been presented to and ruled on by the DRB, it is not before this Court for its consideration. Any opinion given by the Court on such a hypothetical proposal would be an impermissible advisory opinion in the procedural posture of the present appeal. The Court therefore declines to 'alter' or to 'clarify' (or to "supplement") its decision as requested by Applicants.


Appellant's Motion to Alter and Amend

Appellant asks the Court to alter or amend its decision with respect to one legal issue and two factual findings; the Court will address each issue or finding in turn.

Section 709

Appellant has moved for the Court to alter its determination that the proposed structure can be considered for approval within the scope of § 709(A). Section 709(A) requires that a nonconforming structure "[s]hall not be moved, enlarged, altered, extended, reconstructed or restored" except upon approval of the DRB (and hence of this Court in this de novo appeal). Appellant instead argues that, to be considered under this section, a proposal must fall under one but not more than one of the listed actions. Appellant's Mot. to Alter and Amend at 1. Appellant argues that the proposal cannot be considered under § 709(A) because the Court concluded that the proposal involved both reconstruction ("the building of a replacement structure within the footprint and volume of the existing structure") and enlargement or extension ("the enlargement or expansion of the existing

4

structure into a new volume or area"). January Decision at 8.

The Court construes zoning ordinances, such as the one at issue in this case, in the same manner as statutes. Appeal of Weeks, 167 Vt. 551, 554 (1998). A court's "paramount goal is to discern and implement the intent of the legislature." Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273 (citing Colwell v. Allstate Ins. Co., 2003 VT 5, ¶ 7, 175 Vt. 61); and see Trickett v. Ochs, 2003 VT 91, ¶ 22 (court's foremost obligation when interpreting a statute is to ascertain and implement the underlying legislative intent). Courts are directed to interpret statutes, if possible, according to the plain meaning of the language used, In re Stowe Club Highlands, 164 Vt. 272, 279 (1995), and to presume that all of the statutory language was inserted for a purpose. In re Miller, 2009 VT 36, ¶ 14, 185 Vt. 550 (quoting Slocum v. Dep't of Social Welfare, 154 Vt. 474, 481 (1990)). Courts are also required to avoid a construction of the language that "leads to absurd or irrational results." Springfield Terminal Ry. Co. v. Agency of Transp., 174 Vt. 341, 348 (2002) (citing Heisse v. State, 143 Vt. 87, 90 (1983)).

Appellant's construction of the Zoning Ordinance would lead to just such an absurd result. Under Appellant's reading, the Zoning Ordinance would allow an applicant to build an addition onto an existing nonconforming building, or to reconstruct the existing nonconforming building within the same footprint and volume as the existing building, but not to do both within a single construction project. Appellant's interpretation would require an applicant first to obtain a permit to reconstruct the structure and then to perform the reconstruction work, and then require the applicant subsequently to obtain a second permit to expand the structure and to perform the expansion work. This administratively burdensome outcome is unnecessary and serves no apparent legislative purpose related to the goals of zoning.

Accordingly, the Court declines to change its ruling that the proposal was

eligible to be reviewed under § 709(A).

Characterization of the Basement as "Walk-Out"

Appellant asks the Court to modify its findings describing the basement of the proposed house by replacing the words "walk-out basement level" with "ground level living area" and by adding a finding that that new level of the proposed house is "larger in footprint than the footprint of the existing single story." See January Decision at 3; Appellant's Mot. to Alter and Amend at 2.

The Court has reviewed the plans and elevations of the proposed house, and agrees that they show not only a full story on the basement level facing the lake, but also show areas of basement wall exposed above the surface of the ground on the north and south elevations, as well as some basement wall exposed above the surface of the ground on the east elevation. However, the proposed basement does fall within the definition of "Basement – Walk In/Out" in Article IX of the Zoning Ordinance, so that the Court therefore declines to change the characterization of this level of the house as a "walk-out" basement. As the basement walls extend above the surface of the ground, the proposed walk-out basement level is also larger in footprint than the footprint of the existing single story house.

The proposed walk-out basement level is proposed to contain living space, as are the two floors proposed above it. The question of whether the floors or stories of the proposed building are characterized as "basement," "ground," "first," or "second" does not affect the result in the present case, but may be material to any future proposal to construct only above or below the footprint of the existing house (see, e.g., Applicants' Mot. to Amend or Clarify, discussed above). As the present case does not involve a proposal under § 709(B), the Court did not intend, by describing various levels of the proposed house as "ground," "first," or "second," to rule on how they should or would be analyzed under § 709(B). Therefore, the Court

6

will amend the following language on page 3 of the January Decision to eliminate the characterizations of the various floors of the proposed house while accurately describing the proposal before the Court in the present case. Additions are shown in **bold** type; deletions are shown in ~~strike-through~~.

> "The house is proposed to consist of three stories: ~~a ground or first~~ **one** floor at the elevation of the existing house, but larger in footprint; a new walk-out basement level, below the level of the existing single-story house, **but extending wholly or partly above the surface of the ground on all sides of the building, and larger in footprint than the existing house**; and a new upper ~~or second~~ floor above the elevation of the existing single-story house, and larger in footprint."

The Deck

Finally, Appellant argues that the Court should alter its finding regarding the additional area of the shoreline setback that will be occupied by the deck of the proposed structure. Appellant's Mot. to Alter and Amend at 2. Specifically, Appellant asks the Court to modify its findings to add an additional Area E to Diagram 2. That area is an additional area of the shoreline setback that is currently occupied by a landing, from which stairs at the inner ends of the two existing decks lead down to another deck that is proposed to be removed. The new rear deck is proposed to extend entirely across the rear of the building, approximately ten feet above the walk-out basement floor, while the former landing occupied the same footprint but was located closer to the level of the ground.

In its decision, the Court determined that Areas C and D on Diagram 2 show the currently clear areas of the shoreline setback that would be occupied by the new deck. Because that is a statement about the surface area or footprint ("ground area") of the proposed house relative to the setback, see § 709(A)(3), Article IX, it is an accurate statement. The Court therefore declines to alter its finding on this point. That is, the area of the shoreline setback currently occupied by the landing between

7

the two existing decks should not be counted as a new area of the shoreline setback to be occupied by the new deck.

Based on the foregoing, it is HEREBY ORDERED and ADJUDGED that Applicants' Motion to Amend or Clarify is DENIED; and Appellant's Motion to Alter and Amend is GRANTED in part and DENIED in part, as discussed above, again concluding this case. The written decision in this matter posted on the Court's website will also be amended to reflect the rulings on the present motions.

Done at Berlin, Vermont, this 10th day of March, 2011.

_____
Merideth Wright
Environmental Judge