MAR 18 2011


STATE OF VERMONT

VERMONT
SUPERIOR COURT
ENVIRONMENTAL DIVISION

SUPERIOR COURT

ENVIRONMENTAL DIVISION

}
In re Kelsey Notice of Violation    }    Docket No. 123-7-10 Vtec
}
}

## Decision and Order on Cross-Motions for Summary Judgment

Appellant Robert Kelsey appealed from a June 28, 2010 decision of the Development Review Board (DRB) of the Town of North Hero, upholding a Notice of Violation issued to him on April 23, 2010 for subdividing property without obtaining a subdivision permit and for deeding a beach-access easement and other beach rights without prior approval.[1] Appellant is represented by Daniel S. Triggs, Esq.; the Town of North Hero is represented by Paul S. Gillies, Esq.; and Interested Person Mary Jane Healy has entered an appearance representing herself.

Appellant and the Town have each moved for summary judgment on all three questions in the Statement of Questions. The first question asks the Court to determine whether § 130(D) of the North Hero Zoning Bylaws (the Zoning Bylaws) has the effect of eliminating the Zoning Bylaws' requirement to obtain land use permits and makes the Zoning Bylaws unenforceable. If the Zoning Bylaws are enforceable, Question 2 asks the Court to determine whether the conveyance of a pre-existing non-conforming lot together with a portion of a pre-existing conforming lot constitutes a subdivision under §§ 130(b)(1) and 340; and Question 3 asks whether the DRB lacks jurisdiction to regulate the transfer of beach rights in that

---

[1] Neither the Notice of Violation nor the DRB decision upholding that Notice of Violation has been provided to the Court.

conveyance because Appellant's property held pre-existing alienable beach rights prior to the transfer. The following facts are undisputed unless otherwise noted.

Appellant owns a large parcel of land lying between U.S. Route 2 and Lake Champlain in the Town of North Hero; at the time of the 2009 transaction that is the subject of the Notice of Violation at issue in this case, Appellant's large parcel consisted of 41.47 acres of land. Appellant's large parcel is bounded on the west by Lake Champlain and on the east by U.S. Route 2. As shown on Diagram 1 attached to this decision, a private road known as West View Lane, approximately 60 feet in width by scale from the tax map provided as Town's Exhibit 3, runs along the northerly boundary of Appellant's property, giving access to Route 2 and to the lake over property now owned by Jaro.

The Shorelands zoning district consists of the land from the low water mark of Lake Champlain (at elevation 92.50 feet above sea level) inland for a distance of 500 feet. The parties do not dispute that the properties at issue in this appeal are located in the Shorelands zoning district, in which the minimum total lot area under the 2006 Zoning Bylaws is two acres and the minimum building lot area is one acre.

Appellant's large parcel is bounded on its north, that is, on the northerly edge of the West View Lane right-of-way as it runs on Appellant's large parcel, by four properties. The most westerly of these four properties is a 0.08-acre lakeshore lot owned by Jaro, 66 feet in width at the lake. The next property to the east along the northerly boundary of Appellant's large parcel is a lot owned by Arnosky, not at issue in this appeal. The next property to the east along the northerly boundary of Appellant's large parcel is the triangular 0.22-acre lot also then owned by Appellant and part of the 2009 transaction at issue in this appeal. The remaining property to the east along the northerly boundary of Appellant's large parcel, between the triangular 0.22-acre lot and U.S. Route 2, is the southeastern boundary of a 6.9-acre

2

lot also owned by Jaro. The Town tax map provided as Town's Exhibit 3 shows the right-of-way for West View Lane as traveling from Route 2 across the larger Jaro lot, onto Appellant's large parcel and westerly on Appellant's large parcel along its northerly boundary, continuing westerly to the lake on, and occupying the entirety of, the small Jaro lakeshore parcel.

From the deeds provided as Town's Exhibits 1 and 2 and Appellant's Exhibit 2, the triangular 0.22-acre lot was created in or prior to 1949, and was conveyed in 1957 to Appellant's predecessors: Mae Manning and Vera Kelsey, who held it as joint tenants. Appellant's large parcel was apparently also owned by a Manning, as it is referred to as the "so-called Manning property" in the deed of the triangular 0.22-acre lot from Cameron to Mae Manning and Vera Kelsey. The deed of the triangular 0.22-acre lot included a "right of way for vehicles, teams, and on foot" from Route 2 to the lakeshore and to the triangular 0.22-acre lot. The right-of-way included in the deed of the triangular 0.22-acre lot is undefined in width or location.

For clarity and ease of reference, the Court will refer to the 0.22-acre triangular lot as the "Manning/Kelsey Lot" or as "Lot A," as shown on Diagram 1 attached to this decision. Appellant acquired the Manning/Kelsey Lot, together with other property, through a January 2, 1996 decree of distribution of the estate of Mae Manning, the surviving joint tenant. That decree is referred to in the deeds but has not been provided to the Court in connection with the present motions; therefore the Court cannot determine whether Appellant also acquired the 41.47-acre parcel by that decree.[2] The Town tax map provided as Town's Exhibit 3 shows the

---

[2] If both parcels came into Appellant's ownership by the 1996 decree, it would be necessary to determine what minimum lot size was required under the zoning ordinance in effect in 1996, if any, and what merger provisions were then provided by the then-zoning ordinance, to determine whether the Manning/Kelsey Lot merged with Appellant's large parcel at that time, or became a separate, pre-existing

3

Manning/Kelsey Lot as being distinct from the remainder of Appellant's property, that is, from Appellant's large parcel. The parties all treat the Manning/Kelsey Lot as a pre-existing nonconforming lot, and the Court will analyze it as such without considering the possibility of a 1996 merger, which is discussed at note 2. The preexisting Manning/Kelsey Lot, Lot A, is nonconforming as to lot area.

Interested Person Healy owns a landlocked one-acre trapezoidal parcel of land on the southerly side of West View Lane, entirely surrounded by Appellant's large parcel. The northerly boundary of the Healy parcel is the southerly edge of the West View Lane right-of-way. The Healy memorandum refers to a boat launch ramp developed by the Healys in 1972 on the lakeshore, approximately one hundred fifty feet south of the Jaro beach access, and located at the direction of the Healys' grantors: Manning and Kelsey. The deed from Manning and Kelsey to Healy has not been provided, so that the Court cannot determine what deeded lake access or beach rights were conveyed to Healy, however, the Healy beach rights are not material to the present appeal.

By a single deed executed on November 24, 2009, and recorded on November 25, 2009, Appellant transferred the preexisting Lot A to a Martin Deem, together with a half-acre of vacant land on the south side of the West View Lane right-of-way, directly to the east of the Healy property and extending southerly along the easterly Healy boundary a distance of 120 feet from the southerly edge of the West View Lane right-of-way.[3] Until this conveyance, the half-acre of vacant land was

---

small lot, entitled to remain as a separate non-conforming lot. See Appeal of Weeks, 167 Vt. 551, 557 (1998) (merger of a non-conforming lot is not automatically triggered when it is brought under common ownership with an adjoining parcel unless merger is expressly provided in the zoning ordinance).

[3] If, by this transaction, the half-acre of vacant land in Lot B merged with the pre-existing Lot A, the resulting three-quarter-acre property would be less nonconforming than the former Lot A, but would not itself become a conforming lot

4

part of Appellant's large parcel. Appellant did not obtain a subdivision permit under § 340 to subdivide Lot B from his pre-existing 41.47 acre lot prior to the conveyance of both parcels to Deem.

The half-acre of vacant land is described in the deed from Kelsey to Deem as being bounded on its north by the "south line of the right of way of said West View Lane" and as measuring 140 feet along West View Lane, and also 140 feet, more or less, along its southerly and easterly boundaries. This decision will refer to the half-acre of vacant land described in this conveyance as "Lot B," as shown on Diagram 1, attached.

Below the description of Lot B, but not by its terms limited to the Lot B portion of the conveyance, the deed states that:

> [i]ncluded in this conveyance is an easement sixty (60) feet in width for access to Lake Champlain over the retained land of the Grantor and the use of a sixty (60) foot wide portion of the beach for recreational purposes, including but not limited to the boat launching. The location of the easement shall be mutually agreed upon by the Grantor and Grantee and once established shall not be relocated without the consent of each party or their heirs and assigns. The easement shall be construed as running with the land conveyed herein.

> Also included in this conveyance is the right to install a suitable dock either within the easement area or on other adjacent lands owned by the Grantor.

(Emphasis added). It also appears from this deed description that, like the Healy property, Lot B remains separated from the northerly boundary of Appellant's large parcel by Appellant's retained land lying under the right-of-way of West View Lane as it runs across the northerly edge of Appellant's large parcel.

Appellant did not obtain approval from the DRB under § 476 for the 60-foot-

---

in the Shorelands zoning district. The removal of a half-acre of land from Appellant's large parcel would not render it nonconforming.

5

wide deeded easement and accompanying beach rights conveyed in the deed.

In February of 2010, the DRB denied Appellant's application for approval of the transaction as a boundary line adjustment, without prejudice to his applying for subdivision approval for the transaction, apparently on the basis the Zoning Bylaws do not provide for boundary line adjustments as distinct from subdivision approval. On April 23, 2010, the Zoning Administrator issued a Notice of Violation to Appellant for failure to apply for a subdivision permit from the DRB as required by §§ 130(b)(1) and 340 and for failure to obtain approval of the deeded beach rights and easement as required by § 476 of the 2006 Zoning Bylaws.[4] Appellant appealed the Notice of Violation to the DRB, which upheld the Notice of Violation on June 28, 2010, and appealed the DRB decision to this Court in the present appeal.

Motions for Summary Judgment

A grant of "summary judgment is appropriate when, giving the benefit of all reasonable doubts and inferences to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Gade v. Chittenden Solid Waste Dist., 2009 VT 107, ¶ 7 (citing Mooney v. Town of Stowe, 2008 VT 19, ¶ 5, 183 Vt. 600 (mem.); V.R.C.P. 56(c)). When considering cross-motions for summary judgment, the Court gives each party "the benefit of all reasonable doubts and inferences when the opposing party's motion is

---

[4] On April 27, 2010, the first public notice was issued for the public hearing for the 2010 Zoning Bylaws, which were adopted on June 7, 2010. See Johnson Aff. at ¶¶ 2, 3. The Notice of Violation stated the violation as failure to obtain the required approval of the easement and beach rights from the Planning Commission, which was the body responsible for this approval as of the date of the Notice of Violation. This function of the Planning Commission was transferred to the DRB in connection with the adoption of the 2010 Zoning Bylaws. All references in this decision are to the 2006 Zoning Bylaws unless otherwise noted.

6

being judged." City of Burlington v. Fairpoint Communications, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington, Co., 155 Vt. 44 (1990)).

Whether § 130(D) Invalidates the 2006 Zoning Bylaws

Section 130(D) of the 2006 Zoning Bylaws reads in its entirety:

Not withstanding any other statement set forth in these bylaws to the contrary, the failure to obtain a required municipal permit including, but not limited to, any zoning, planning, subdivision, site plan, health, street or building permit, or the failure to record such certificate, is hereby waived. All development existing as of the 1 January 1990 is hereby approved with the exception of any and all sewage disposal or septic systems which are found to constitute an existing or a potential health hazard to the general health, safety, and welfare to the citizens of the Town of North Hero. Such conditions are specifically not grandfathered by the adoption of these bylaws. Said conditions must be corrected pursuant to these bylaws and any and all duly adopted regulations of the Town of North Hero.

Appellant argues that the first sentence of this section renders the permitting requirements of the Zoning Bylaws unenforceable, and thereby eliminates the need for him to obtain DRB approval to subdivide Lot B from the remainder of his property, as well as eliminating the need for DRB approval of the easement and beach rights.

Courts construe zoning bylaws in the same manner as statutes, Appeal of Weeks, 167 Vt. 551, 554 (1998). The Court's goal is to give effect to the intent of the bylaws' drafters. Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273. The Court is bound by the intent apparent in the language of the bylaws, unless that language "is uncertain or unclear." In re Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584 (mem.). If the language is unclear or ambiguous, the Court is directed to discern the meaning "by considering the statute as a whole, reading integral parts of the statutory scheme together," Heffernan v. Harbeson, 2004 VT 98, ¶ 7, 177 Vt. 239

7

(citing <u>Paquette v. Paquette</u>, 146 Vt. 83, 86 (1985)), rather than interpreting only an "isolated sentence." <u>In re Stowe Club Highlands</u>, 164 Vt. 272, 279 (1995) (quoting <u>Williston Citizens for Responsible Growth v. Maple Tree Place Assocs.</u>, 156 Vt. 560, 563 (1991). If "the literal meaning of the words is inconsistent with legislative intent and the precise wording of the statute produces results which are manifestly unjust, absurd, unreasonable or unintended, or conflicts with other expressions of legislative intent, legislative intent must prevail." <u>Cyr v. McDermott's Inc.</u>, 2010 VT 19, ¶ 15 (quoting <u>Delta Psi Fraternity v. City of Burlington</u>, 2008 VT 129, ¶ 7, 185 Vt. 129) (internal quotations omitted).[5]

Appellant's reading of § 130(D) is unreasonable because it would render all the succeeding thirty-eight pages of carefully-drafted ordinance provisions superfluous and ineffective, which could not have been intended by the Zoning Bylaws' drafters. See <u>Cyr v. McDermott's Inc.</u>, 2010 VT 19, ¶ 15. Rather, it is necessary to read § 130(D) in the context of the remainder of § 130 and of the purpose statement of the Zoning Bylaws "to provide for the orderly community growth and to further the purposes established in the North Hero Town Plan and in the Act." § 120.

Section 130(B) requires all land development, occupancy, and use to be in compliance with the Zoning Bylaws, including the permitting requirements, and

---

[5] Interested Person Healy, who is a member of the DRB and participated in the drafting of the Zoning Bylaws, states in her brief that the intent of the drafters was not to render the Zoning Bylaws unenforceable by the language of § 130(D). However, such subsequent legislative history is not given any weight when determining the legislative intent of the drafters, compared with contemporaneous legislative history and the context and overall operation of the zoning bylaw. See, e.g., <u>State v. Madison</u>, 163 Vt. 360, 373 (1995) (per curiam) (citing 2A N. Singer, Sutherland on Statutes and Statutory Construction § 48.10, at 343 (5th ed. 1992)) ("statements made after the statute has been passed cannot retroactively provide legislative history").

§ 130(C) prohibits any use that is not permitted by the Zoning Bylaws. It would be particularly unreasonable for the drafters to have included a subsection within that same section that would have had the effect of invalidating §§ 130(B) and (C) as well as the entire remainder of the Zoning Bylaws. Rather, in the context of §§ 130(B) and (C), it is evident that § 130(D) was carried forward in the Zoning Bylaws as a so-called grandfathering provision to protect development that had been in existence prior to January 1, 1990[6] from exposure to retroactive enforcement. That intent is apparent despite the awkward drafting of § 130(D), especially as one can make sense of the section and avoid such an absurd result simply by reading the first two sentences of § 130(D) together, as follows:

> Notwithstanding any other statement set forth in these bylaws to the contrary, the failure to obtain a required municipal permit including, but not limited to, any zoning, planning, subdivision, site plan, health, street or building permit, or the failure to record such certificate, is hereby waived [**for** a]ll development existing as of the 1 January 1990[, **which**] is hereby approved[,] with the exception of any and all sewage disposal or septic systems which are found to constitute an existing or a potential health hazard to the general health, safety, and welfare to the citizens of the Town of North Hero. Such conditions are specifically not grandfathered by the adoption of these bylaws. Said conditions must be corrected pursuant to these bylaws and any and all duly adopted regulations of the Town of North Hero.

Accordingly, Summary Judgment is GRANTED to the Town and DENIED to Appellant that § 130(D) does not render the remainder of the Zoning Bylaws unenforceable.

Whether the 2009 Conveyance Required Prior Subdivision Approval

Appellant argues that §§ 130(B) and 340 do not apply to his conveyance of Lot

---

[6] The Town has not provided information as to whether this was the date on which a zoning ordinance was first adopted.

A and Lot B in a single deed, because the conveyance constituted "the merger of a pre-existing non-conforming lot with a portion of a pre-existing conforming lot." Appellants Mot. for Summ. J. at 2. However, whether or not Lot A and Lot B merged, a subdivision occurred when the property contained in Lot B was separated from Appellant's large parcel.

A subdivision occurs when an existing parcel of land is divided into two or more parcels of land. §§ 130(B), 340(A); and see 24 V.S.A. § 4418. Assuming that Lot A did not merge with Appellant's large parcel in 1996, see note 1, above, Appellant could have conveyed Lot A alone, without creating a subdivision. However, the separation of Lot B from Appellant's large parcel of land was a subdivision, under § 340(A), because it created two parcels of land: Lot B and Appellant's retained land from the large parcel. The subdivision of Lot B from Appellants' retained land occurred whether or not Lot B was thereafter conveyed to another together with Lot A, as was done in the present case, or if it were first conveyed in a separate deed to an existing owner of Lot A.

Appellant argues that Lot B has merged with Lot A, so that the resulting number of lots has not increased from the number of lots prior to the conveyance.[7] However, even if that is true, the subdivision for which a permit is required is the division of Lot B out of Appellant's large parcel. Although some towns' zoning ordinances do treat such transactions as minor subdivisions or as boundary adjustments requiring only Zoning Administrator approval, the North Hero Zoning Bylaws contain no such provision.

Accordingly, Summary Judgment is GRANTED to the Town of North Hero

---

[7] It appears from the materials provided to the Court that Lot A is not contiguous to Lot B, as the land lying under West View Lane was retained in Appellant's ownership. However, the question of whether a subdivision permit was required does not depend on whether the two lots have or have not merged.

and DENIED to Appellant, upholding the Notice of Violation that Appellant subdivided his larger lot to create Lot B and that prior DRB review was required under §§ 130(B) and 340 of the Zoning Bylaws.

Whether the 2009 Conveyance Required Prior Approval of the Deeded Beach Access

Section 476 of the Zoning Bylaws requires DRB approval of "the use of shorelands district property as deeded access for others to Lake Champlain." The Zoning Bylaws require that the lot across which access is granted be at least one acre in size, with at least 100 feet of lake frontage and a width of at least 100 feet. § 476(A). Section 476 also prohibits the grantee from constructing any buildings or structures on the easement, and from constructing any dockage in excess of that required to aid in boat launching, and prohibits any more than two moorings per lot. § 476(B).

Appellant argues that such DRB approval was not required, because Lot A already held an existing easement which was alienable. However, in the deed, Appellant also deeded a new easement that establishes additional beach rights compared to the Lot A easement, and contains a more specific description of the width of the easement and of the beach access. The easement granted in the November 24, 2009 deed therefore must obtain DRB approval under § 476. The issue of whether Lot A's easement is freely alienable is not material to this requirement. Section 476 requires DRB approval of the use of Shorelands zoning district property as deeded access for others to Lake Champlain. Accordingly, Summary Judgment is GRANTED to the Town and DENIED to Appellant in that DRB approval is required, under § 476, of the second easement contained in the November 24, 2009 deed.

11

Reimbursement of Costs and Attorney's Fees

The Town requests reimbursement for the costs it has had to bear in "enforcing" the Notice of Violation that is the subject of this appeal. This request is misplaced; there is no provision for costs or attorney's fees or penalties in an appeal of a notice of violation. All that was at issue in this appeal was the DRB's decision upholding the Notice of Violation. If the Town brings an enforcement action under 24 V.S.A. § 4451, the Court will consider any appropriate penalties at that time.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town of North Hero's Motion for Summary Judgment is GRANTED and Appellant's Motion for Summary Judgment is DENIED, concluding this appeal. If the parties wish a separate judgment order pursuant to V.R.C.P. 58, they shall provide a copy of the Notice of Violation for the Court's use in drafting the judgment order.

Done at Berlin, Vermont, this 18th day of March, 2011.

Merideth Wright
Environmental Judge

12

N

Lake
Champlain

Jaro

Arnosky

Lot A

Lane

Jaro          West View          Lot B

Healy

U.S. Route 2

Kelsey

Diagram 1
   From Town tax map (Ex. 3)
   except for shape and
   measurements of Lot B,
   which are approximate.